## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORNELIA KIM, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) Case No. _____ |
| v. | ) ) JURY TRIAL DEMANDED ) |
| SENOMYX, INC., KENT SNYDER, STEPHEN A. BLOCK, TOM ERDMANN, MARY ANN GRAY, JOHN W. POYHONEN, DAN STEBBINS, CHRISTOPHER TWOMEY, FIRMENICH INCORPORATED, and SENTRY MERGER SUB, INC., | ) CLASS ACTION ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on September 17, 2018 (the "Proposed Transaction"), pursuant to which Senomyx, Inc. ("Senomyx" or the "Company") will be acquired by Firmenich Incorporated ("Parent") and Sentry Merger Sub, Inc. ("Merger Sub," and collectively with Parent, "Firmenich").

2. On September 16, 2018, Senomyx's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Firmenich. Pursuant to the terms of the Merger Agreement, Merger Sub commenced a tender offer set to expire on November 2, 2018, and Senomyx stockholders will

receive $1.50 in cash per share of Senomyx.

3. On October 4, 2018, defendants filed a Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Senomyx common stock.

9. Defendant Senomyx is a Delaware corporation and maintains its principal executive offices at 4767 Nexus Centre Drive, San Diego, California 92121. Senomyx's common

stock is traded on the NasdaqGM under the ticker symbol "SNMX."

10. Defendant Kent Snyder is Chairman of the Board of Senomyx.

11. Defendant Stephen A. Block is a director of Senomyx.

12. Defendant Tom Erdmann is a director of Senomyx.

13. Defendant Mary Ann Gray is a director of Senomyx.

14. Defendant John W. Poyhonen ("Poyhonen") is President, Chief Executive Officer ("CEO"), and a director of Senomyx.

15. Defendant Dan Stebbins is a director of Senomyx.

16. Defendant Christopher Twomey is a director of Senomyx.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

18. Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

19. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of the Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action on behalf of herself and the other public stockholders of Senomyx (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

21. This action is properly maintainable as a class action.

22. The Class is so numerous that joinder of all members is impracticable. As of September 16, 2018, there were approximately 48,980,204 shares of Senomyx common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

3

23. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

24. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

25. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

26. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

27. Senomyx discovers novel flavor ingredients and natural high intensity sweeteners that allow food and beverage companies to create products.

28. Under its direct sales program, Senomyx sells its Complimyx® brand flavor ingredients, Sweetmyx®, Savorymyx®, and Bittermyx®, to flavor companies for use in a wide variety of foods and beverages.

29. In addition, Senomyx has partnerships with leading global food, beverage, and ingredient supply companies, which are currently marketing products that contain Senomyx's flavor ingredients.

30. On August 2, 2018, the Company issued a press release wherein it reported its second quarter 2018 financial results.

31. According to Individual Defendant Poyhonen, "Senomyx completed a strong first half of 2018, building on the successful results we achieved during the prior quarter."

32. Poyhonen continued: "We exceeded our financial guidance for the second quarter and are well positioned to meet key corporate and R&D goals in the coming months. We also recently achieved a fermentation strain proof of concept for siratose production, identified new flavor ingredients producing taste proof of concepts for our bitter blocker and cooling ingredient research programs, obtained new regulatory approvals and grew our direct sales to record levels."

33. In the August 2, 2018 press release, the Company reported that:

Earlier this quarter, the Company announced that Senomyx scientists had developed two initial fermentation strains capable of producing siratose. Both strains are currently doing so at very low levels. As a next step in the overall process, the Company is now working to optimize the fermentation process to a level which can support its desired yield and cost target for future commercialization. . . .

New Market Opportunities

Senomyx is actively pursuing opportunities in the global pharmaceuticals market. Many active pharmaceutical ingredients (APIs) have a bitter taste, which often has a significant negative impact on patient compliance, especially in pediatric and geriatric patient populations. These are very large patient populations where patients are more likely than normal to experience difficulties in swallowing coated or encapsulated forms of the API. As a result, these patients tend to be given prescriptions in syrup or liquid suspension formats where the bitter taste of the API may be more prevalent and problematic. In addition, both the U.S. FDA and the European Medicines Agency have established requirements for accelerated availability of formats for pediatric patient populations, escalating the need for reliable and cost-effective solutions to address bitterness of APIs.

5

Senomyx previously announced significant R&D progress with its new bitter blocking program for APIs. Company scientists have identified the function of 22 bitter taste receptors, meaning that they have found the specific receptors that are responsible for sending bitter taste signals that are found in many food, beverage, over-the-counter and API products. Leveraging this knowledge, Senomyx has developed a comprehensive bitter receptor profile to more effectively screen APIs and to identify the specific bitter receptor associated with bitter taste of a respective API. At this time, Senomyx scientists have identified specific bitter receptors related to over 50 APIs and have already identified promising bitter blocker leads for a majority of these APIs. . . .

During the first quarter of 2018, Senomyx scientists completed the primary screening of about 170,000 previously unscreened library samples with the goal of discovering and developing new cooling ingredients with benefits over existing cooling ingredients. . . .

Regulatory Updates

The Company announced today that its flavor with modifying properties for fructose and sucrose (Sweetmyx® S617), its cooling agent (S2227), and its savory flavor (S3643) have received positive determinations regarding safety from the Joint Food and Agriculture Organization (FAO)/World Health Organization (WHO) Expert Committee on Food Additives (JECFA). The JECFA determinations allow immediate usage of these new ingredients in many countries in Latin America, Asia and Africa. . . .

The GRAS designation allows for commercialization in the U.S. as well as numerous additional countries, and it facilitates approval in much of the rest of the world. Other countries, particularly those that do not have independent regulatory approval systems, rely on JECFA to determine the safety of new food additives and flavors. Each of the Senomyx flavor ingredients under review by JECFA was determined to have no safety concerns based on current estimated dietary exposure. This determination allows them to be marketed in countries utilizing JECFA.

Commercialization Updates

"Direct sales of our Complimyx® flavor ingredient portfolio delivered revenues of $715,000 during the second quarter of 2018, marking the highest sales in a quarter and six-month period since the inception of our direct sales program," stated Sharon Wicker, Senior Vice President and Chief Commercial Development Officer. "For the six months ended June 30, 2018, direct sales revenues totaled $1.3 million, a 27% increase over the corresponding 2017 period. We continue to grow our existing business base as well as earn new business with top-tier global flavor house customers. Based on recent feedback regarding several new business opportunities, our customers' forecasts reflect expanded use of our flavor ingredients. In all, we

remain optimistic about the future growth prospects for our direct sales business."

Financial Results

Total revenues of $3.3 million for the second quarter ended June 30, 2018 exceeded previously provided financial guidance of $3.0 million. Commercial revenues of $1.6 million exceeded guidance of $1.3 million for the second quarter of 2018. . . .

34. On September 16, 2018, Senomyx's Board caused the Company to enter into the Merger Agreement with Firmenich.

35. Pursuant to the terms of the Merger Agreement, Senomyx stockholders will receive $1.50 in cash per share of Senomyx.

36. According to the press release announcing the Proposed Transaction:

Firmenich and Senomyx, Inc. (NASDAQ: SNMX) today announced that they have entered into a definitive merger agreement under which Firmenich will acquire all of the outstanding common stock of Senomyx for $1.50 per share in cash. This represents a premium of approximately 43% over Senomyx's closing price on September 14, 2018 and a premium of approximately 39% based on the prior 30-trading day volume-weighted average price (VWAP). The proposed transaction has been unanimously approved by the Boards of Directors of both Firmenich and Senomyx. The companies expect to close the transaction in the fourth quarter of 2018. . . .

Upon closing, Senomyx will be integrated into Firmenich's North America Research & Development (R&D) organization and its products will be commercialized through its Taste Platform. Senomyx R&D operations will remain in San Diego, with a continued focus on discovering and developing world-class flavor and sweetener solutions for the world's greatest brands. Firmenich looks forward to continuously advancing Senomyx's innovative pipeline of products and its discovery capabilities to shape the most differentiating natural taste solutions for its customers. Innovation-driven and recognized for its world-class ingredient screening capabilities, Senomyx recently identified and has started to develop a high intensity and a clean tasting sweetener, Siratose, which naturally occurs in Monkfruit.

Under the terms of the merger agreement, Firmenich will promptly commence a tender offer to acquire all of the outstanding shares of Senomyx common stock for $1.50 per share in cash. Following the successful completion of the tender offer, Firmenich will acquire all remaining shares not tendered in the tender offer through a second-step merger at the same price as to be paid to stockholders tendering their shares in the tender offer. The tender offer is expected to expire at one minute

following 11:59 p.m., Eastern Time, on the 20th business day after the launch of the tender offer, unless extended in accordance with the merger agreement and the applicable rules and regulations of the Securities and Exchange Commission.

The consummation of the tender offer is subject to various conditions, including a minimum tender of a majority of outstanding Senomyx shares and other customary conditions.

37.     Section 5.3(b) of the Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.

38.     Additionally, pursuant to Section 5.3(d) of the Merger Agreement, the Company must promptly advise Firmenich of any proposals or inquiries received from other parties.

39.     Moreover, Section 6.1 of the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants Firmenich a "matching right" with respect to any "Superior Proposal" made to the Company.

40.     The Merger Agreement also provides for a "termination fee" of $3,000,000 payable by the Company to Firmenich if the Individual Defendants cause the Company to terminate the Merger Agreement.

41.     By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

42.     The consideration to be provided to plaintiff and the Class in the Proposed Transaction appears inadequate.

43.     Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

44.     Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

*The Solicitation Statement Omits Material Information, Rendering It False and Misleading*

45.     Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. As set forth below, the Solicitation Statement omits material information with respect to the Proposed Transaction.

46.     The Solicitation Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Needham & Company, LLC ("Needham").

47.     With respect to Needham's Discounted Cash Flow Analyses, the Solicitation Statement fails to disclose: (i) the range of illustrative terminal enterprise values; (ii) the specific inputs and assumptions underlying the discount rates ranging from 22.5% to 27.5%; (iii) Needham's basis for applying perpetual growth rates ranging from 3.0% to 5.0%; (iv) Senomyx's cash; and (v) Senomyx's debt.

48.     With respect to Needham's Selected Companies Analysis, the Solicitation Statement fails to disclose the individual multiples and financial metrics for the companies observed by Needham in the analysis.

49.     With respect to Needham's Selected Transactions Analysis, the Solicitation Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Needham in the analysis.

9

50. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

51. The Solicitation Statement also omits material information regarding potential conflicts of interest of Conexus Capital Advisors, Inc. ("Conexus"), the Company's second financial advisor in connection with the Proposed Transaction.

52. Specifically, the Solicitation Statement fails to disclose whether Conexus has provided past services to any party to the Merger Agreement or the party's affiliates, as well as the timing and nature of such services and the amount of compensation received for providing such services.

53. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

54. The omission of the above-referenced material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: The Solicitation or Recommendation.

55. The omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**(Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)**

56. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

57. Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made,

in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

58. Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

59. The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

60. The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

61. By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

62. The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

63. Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

64. By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

65. Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

66. Plaintiff and the Class have no adequate remedy at law.

11

## COUNT II

**(Claim for Violation of 14(d) of the 1934 Act Against Defendants)**

67. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

68. Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

69. Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

70. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

71. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

72. The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

73. Plaintiff and the Class have no adequate remedy at law.

## COUNT III

**(Claim for Violation of Section 20(a) of the 1934 Act
Against the Individual Defendants and Firmenich)**

74. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

75. The Individual Defendants and Firmenich acted as controlling persons of Senomyx within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Senomyx and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

76. Each of the Individual Defendants and Senomyx was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

77. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly connected with and involved in the making of the Solicitation Statement.

78. Firmenich also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was

omitted and/or misrepresented in the Solicitation Statement.

79. By virtue of the foregoing, the Individual Defendants and Firmenich violated Section 20(a) of the 1934 Act.

80. As set forth above, the Individual Defendants and Firmenich had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

81. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

82. Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

  E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

  F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: October 8, 2018         **RIGRODSKY & LONG, P.A.**

             By: */s/ Gina M. Serra*
               Seth D. Rigrodsky (#3147)
               Brian D. Long (#4347)
               Gina M. Serra (#5387)
               300 Delaware Avenue, Suite 1220
               Wilmington, DE 19801
               Telephone: (302) 295-5310
               Facsimile: (302) 654-7530
               Email: sdr@rl-legal.com
               Email: bdl@rl-legal.com
               Email: gms@rl-legal.com

               *Attorneys for Plaintiff*